IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF NEW MEXICO

**ALEXANDER WILSON,**

    **Plaintiff,**

vs.    No.  CIV-99-759JP/WWD

**PITRE, INC.,**

    **Defendant.**

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW the Plaintiff ALEXANDER WILSON, by and through counsel of record GEIGER LAW OFFICES P.C. (Mark P. Geiger), and hereby submits Plaintiff's Proposed Findings of Fact and Conclusions of Law, for the trial which is currently set for May 22, 2001.

### I.    PROPOSED FINDINGS OF FACT

1.    Venue is properly laid in this District, in the U.S. District Court for the District of New Mexico, and this Court has jurisdiction over the parties and subject matter.

2.    Defendant Pitre, Inc., is a New Mexico corporation, and is and employer within the meaning of Title VII of the Civil Rights Act of 1991, 42 U.S.C. Sec. 2000.

3.    Plaintiff Alexander Wilson began his employment with Pitre, Inc., in June of 1994.

4.     Plaintiff filed his EEOC Charge of Discrimination September 26, 1997, and his employment was terminated on November 26, 1997.

5.     Plaintiff has exhausted all administrative remedies, and satisfied all conditions for filing suit.

6.     Alex has been <u>repeatedly and continually</u> harassed by racially derogatory comments and offensive racial slurs against Native American Indians in general, and himself individually, which were made by Defendant Pitre's supervisors, subjecting Alex Wilson to a hostile and discriminatory work environment.

7.     Alex Wilson has been repeatedly subjected to unwelcome racial, derogatory, and offensive name calling and comments, made by <u>management officials on a daily basis</u>.

8.     "The evidence indicates Charging party was subjected to a racially hostile work environment.

9.     Defendant Pitre <u>admits</u> that racially offensive and derogatory slurs, as alleged in Counts One and Four of the Complaint, were routinely and repeatedly made by Defendant Pitre's management.

10.    Defendant Pitre's management engaged in name calling and used such names as "sheepfucker", referencing Alex Wilson's Navajo heritage, and made jokes and comments to the effect that Indian women like corn because the corncobs can be used as a sexual device.

11.    As a car salesman employed by Defendant Pitre, Inc., Plaintiff was

required to be physically at the Defendant's automobile dealership approximately fifty (50) hours per week.

12. As a condition of his employment, and in order for him to get automobile sales and the financing of automobile sales approved, Plaintiff was required to submit sales and financing proposals to his supervisors, who were the managers of Defendant Pitre, Inc.

13. Upon presenting sales and financing proposals for automobile sales to the management of Defendant Pitre, Inc., Plaintiff Alex Wilson was subjected to severe and pervasive comments directed at his Native American heritage, or at the Native American heritage of the potential buyers of automobiles.

14. This conduct by Defendant Pitre's management negatively affected Plaintiff's ability to get sales and/or financing approved, which negatively affected Plaintiff's conditions of employment, based upon his race and ethnic origin.

15. Plaintiff Alex Wilson seldom joked with his manager Charles Fiorenza about anything which could be derogatory toward Fiorenza, because as a supervisor and a part of Pitre's management team, he could affect Wilson's working hours and conditions, and Wilson's sales of automobiles, by making it difficult to get his sales approved, and generally make his working and financial life miserable.

16. Each of the managers at Pitre, Inc., during the term of Alex Wilson's employment, could drastically affect a salesman's ability to get sales approved or obtain sales, and could generally affect the ease or difficulty with which a salesman could generate and obtain commissions and sales.

17. Managers could also determine which salesman the "walk-in" customers at the dealership were directed to.

18. During Alex Wilson's employment at Pitre, Inc. during 1996 and 1997, the racially derogatory comments and racial slurs made by managers at Pitre, Inc., steadily increased, with frequent and repeated slurs being directed at Alex Wilson, which either degraded him personally on basis of his American Indian race and heritage, or were made directly to Alex Wilson about other American Indians on the basis of their race.

19. Alex Wilson took great offense to the humiliating slurs made against himself individually, and those made directly to him about American Indians in general.

20. During late 1996 and all of 1997, Alex Wilson attempted to question the managers at Pitre, Inc., about why they wanted to make such offensive comments and remarks to him, about American Indians in general, and about his race and American Indian heritage in particular.  Each time the management of Pitre, Inc., would make some other rude remark and simply continue with their comments.

21. Because Alex Wilson was getting no response from the managers when he asked them about their conduct, he would attempt to simply stop the activity each time by walking away.

22. When Alex Wilson was in the process of getting a sale approved to earn his sales commission, he had no choice but to either endure those comments and slurs, or lose his sale and commission if he chose to walk away.

4

23. Prior to September of 1997, Alex Wilson and other sales employees were not aware of any outside toll free number where employees could lodge complaints about racial harassment, and each of these employees would further have had to carefully consider any decision to do so, since doing so would ultimately mean they could lose sales or suffer the consequences in connection with sale approvals, financing, commissions, or working conditions.

24. Managers Rob Hooser and Charles Fiorenza made "sort of offhand jokes like fuckin' Indians, deadbeats" when referring to Native American customers.

25. When deals or proposed sales and financing for Native American customers were presented by Alex Wilson to his managers, Wilson's managers would respond by saying "fuckin' Indian; they can't buy nothing".

26. Those managers would then either throw Alex Wilson's deal up in the air and paper would fly everywhere, or they would throw his deal on the floor and he would have to go and pick it up.

27. Charles Ratliff said "Are you helping those stinkin' Indians?," and said "Why do Native Americans or Navajos buy a lot of trucks?  It's because they stink that's why.  They have to sit in the back."

28. Plaintiff Alex Wilson was offended by the statements about Native American customers because he is also a Native American.

28. Managers Charles Fiorenza, Rob Hooser and Chuck Ratliff called Plaintiff a "sheepfucker," referencing Wilson's heritage as a Navajo, who are known to raise sheep.

5

## II.   PROPOSED CONCLUSIONS OF LAW

1. Venue is properly laid in this District, and the U.S. District Court for the District of New Mexico, and this Court has jurisdiction of the parties subject matter.

2. Defendant Pitre, Inc., is a New Mexico corporation, and is an employer with the meaning of Title VII of the Civil Rights Act of 1991, 42 U.S.C. Sec. 2000.

3. Plaintiff Alexander Wilson began his employment with Pitre, Inc., in June of 1994.

4. Plaintiff filed his EEOC Charge of Discrimination September 26, 1997, and his employment was terminated on November 26, 1997.

5. Plaintiff exhausted all administrative remedies and satisfied all conditions for filing suit.

6. Alex Wilson has been <u>repeatedly and continually</u> harassed by racially derogatory comments and offensive slurs against Native American Indians in general, and himself individually, which were made by Defendant Pitre's management and supervisors, subjecting Alex Wilson to a hostile and discriminatory work environment in violation of Title VII of the Civil Rights Act of 1964.

7. Defendant Pitre, Inc., is liable and responsible for the acts of its managers, who are agents of the employer, and who exercise managerial authority and set policy.

8. The conduct of Defendant Pitre, Inc., by and through its management, was <u>not</u> made up of isolated or sporadic racial comments, jokes or slurs.

9. The conduct of the managers at Defendant Pitre, Inc., was sufficiently

6

severe and pervasive to alter the conditions of Alex Wilson's employment, and created an abusive working environment.

10. The conduct of management at Pitre, Inc., constituted harassment, in the form of racial insults, racial slurs, derogatory comments, and insulting jokes, all based upon derogatory and derisive racial stereotypes of Native American Indians in general, and Navajo Native Americans in particular.

11. The racially oriented harassment engaged in by management, when considering the totality of the circumstances, was severe and pervasive enough to alter the terms, conditions and privileges of Alex Wilson's employment.

12. The management of Pitre, Inc., engaged in a steady barrage of opprobrious racial comments, which were directed at Alex Wilson, the only automobile salesman of the Native American race and culture.

13. The harassment engaged in by the management of Defendant Pitre, Inc., was of a racial rather than a general nature, and was composed of more than a few isolated incidents.

14. The harassment engaged in by the management of Pitre, Inc., stemmed from racial animus, which was not general in nature, and was made up of more than a few isolated incidents of racial enmity.

15. Plaintiff Alexander Wilson is granted judgment on Count One of his Complaint for Race Discrimination, under Title VII of the Civil Rights Act of 1964, as amended.

16.  Plaintiff Alexander Wilson is granted judgment on Count Four of his Complaint for Race Discrimination, under the New Mexico Human Rights Act.

17.  Plaintiff Alexander Wilson is entitled to an award of attorney fees and costs incurred in the lawsuit herein.

Respectfully submitted:

GEIGER LAW OFFICES, P.C.

By: _____
Mark P. Geiger
ATTORNEY FOR PLAINTIFF
ALEXANDER WILSON
500 Marquette, NW, Suite 600
Albuquerque, New Mexico 87102
(505) 843-7075

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to all parties and counsel of record on this _____ day of May, 2001.

_____
Mark P. Geiger

8